LEMMON, Judge.
This appeal by plaintiffs, Mr. and Mrs. Shelby Hampton, questions the adequacy of a $7,500.00 award for Mrs. Hampton’s injuries in a 1968 automobile accident. Plaintiffs basically dispute the trial court’s apparent conclusion that a 1965 automobile accident, rather than the 1968 accident at issue in this suit, caused a herniated cervical disc which required surgery in 1969.
I
In the September, 1965 accident Mrs. Hampton sustained, in addition to a fractured pelvis, injuries to the head, neck and shoulder, which were initially diagnosed by Dr. Jack Wickstrom, an orthopedic surgeon, as a sprain of the cervical spine.
In January, 1966 Dr. Wickstrom referred Mrs. Hampton to Dr. Raeburn Llewellyn, a neurosurgeon, for continuing neck, right shoulder and right upper extremity complaints. Although Mrs. Hampton related episodes of numbness, pulling and sensations of tightness in her right arm and fingers, which Dr. Llewellyn stated could be symptoms of nerve root irritation, he opined that the injury was a sprain rather than a ruptured disc. He treated her conservatively and in October, 1966 hospitalized her for cervical traction for 16 days, diagnosing *1181 “C6-C7 cervical neurological syndrome post-accident manifested by neck pain and right arm neuralgia”. She improved after the hospitalization, but in late November the doctor noted she was not improving with intermittent home traction and heat and was less comfortable than before hospitalization.
In May, 1967 the neck, shoulder and arm complaints continued, although Mrs. Hampton reported that she was working as a legal secretary three or four hours a day, three days per week. In October, 1967 she reported numbness and tingling of the hand. After a March, 1968 examination Dr. Llewellyn expressed his belief that additional neurological testing or treatment would not lessen her continuing uncomfortableness, but would not recommend surgery.
In August, 1968 Mrs. Hampton, upon the advice of her attorney, consulted Dr. Joseph Dugas, a general surgeon who recorded complaints of neck pain radiating into the upper extremity as far as the hand, atrophy of the intrinsic muscles of the hand, muscle spasm, and possible loss of reflexes. Dr. Dugas diagnosed a herniated cervical disc and recommended a myelogram and possible discogram, which Mrs. Hampton considered but declined after consultation with Dr. Llewellyn. She had no further treatment or examinations prior to the November, 1968 accident.
II
In November, 1968 Mrs. Hampton rein-jured her cervical spine in the accident at issue in this appeal and immediately consulted Dr. Dugas. She was also examined five days after the accident by Dr. Llewellyn, who diagnosed an aggravation of the preexisting injury and opined that she would return to her pre-accident status without significant residual injury.
Dr. Dugas undertook the treatment of Mrs. Hampton and prescribed diathermy, sitz baths and medication. When she did not respond favorably to the conservative treatment by August, 1969, he again recommended a myelogram, which revealed a ruptured disc at the C6 — 7 level. Dr. Llewellyn was called in and surgically removed the torn portion of the disc and fused the joint.
Ill
At the 1976 trial (resulting in the judgment from which this appeal has been taken) Mrs. Hampton, in attempting to show the disc herniation was caused by the 1968 accident, primarily relied on the opinion of Dr. Llewellyn. Because he had never diagnosed a ruptured disc before the 1968 accident, he attributed the condition to that accident. Cross-examination revealed, however, that Dr. Llewellyn also had not diagnosed a ruptured disc after the second accident and therefore was incorrect in at least one diagnosis and possibly both. Moreover, he conceded that the basis for his opinion attributing the disc condition to the 1968 accident was the fact that the positive mye-logram occurred after the accident, further admitting that the pattern of symptoms was the same after both accidents and that the symptoms prior to the 1968 accident were consistent with the ultimate finding.
Plaintiffs’ other medical evidence included the testimony of Dr. Wickstrom, who at the time of his last examination of June, 1967 opined that although there was definite nerve root irritation, the condition had not progressed enough to recommend surgery. Finally, there was the testimony of two other doctors, an orthopedic surgeon and a neurosurgeon, who had examined Mrs. Hampton in June, 1967 for evaluation of her 1965 injuries and had found no indication of a herniated disc. However, both of these doctors also examined Mrs. Hampton in December, 1968, after the November, 1968 accident, but before the January, 1969 trial of the claim arising from the 1965 accident. Neither was informed of the recent accident, and each again expressed the opinion (proved to be incorrect) that no herniated disc existed, noting further that her symptoms and the clinical findings were exactly the same as at the time of the first examinations.
*1182 On the other hand, Dr. Dugas, whom Mrs. Hampton had depended upon in the earlier trial when she attempted to prove the 1965 accident produced a ruptured cervical disc and who was the treating physician after the 1968 accident, was called by the court as its own witness. He reiterated and reexplained his opinion that the 1965 accident caused the condition.
IV
The plaintiff, in this civil case, has the burden of proving entitlement to recovery, including proof that the claimed injuries were caused by the accident in suit. This burden may be fulfilled by direct or circumstantial evidence. Favoring Mrs. Hampton is the circumstance that there was no conclusive evidence of a ruptured disc before the second accident, while there was conclusive evidence thereafter. Furthermore, four well qualified physicians who examined Mrs. Hampton between the first and second accidents, opined that she did not have a ruptured disc before November, 1968. (Their opinions in examinations shortly after the second accident must be considered in light of the fact that symptoms of ruptured discs a short time after an injury are often similar to symptoms of sprains.)
Nevertheless, Dr. Dugas was the only doctor who ever diagnosed a ruptured disc without myelography, and he did so before the second accident. As the treating physician after the second accident, moreover, his opinion is entitled to great weight. Furthermore, Mrs. Hampton persistently exhibited symptoms consistent with disc involvement from the time of the first accident. All medical experts agreed irritation at the C6-7 level can cause ulnar nerve symptoms in the hand, such as loss of sensation and atrophy. Mrs. Hampton experienced these symptoms, and Dr. Dugas noted them as the basis of his diagnosis. Finally, the fact that Mrs. Hampton had been steadily employed as a legal secretary for many years prior to the 1965 accident, but worked only two weeks in 1968, impugns to some extent her own testimony that she was “doing fairly well” and “feeling quite improved” in 1968 until the accident occurred.
We cannot say the evidence preponderantly proved the 1968 accident caused the herniated disc. There is ample medical evidence to support the conclusion that considerable disc involvement was attributable to the 1965 accident, and we cannot say that an award of $7,500.00 for aggravation of this condition (the extent of which aggravation could not be precisely defined by the medical evidence) constituted an abuse of the much discretion vested in the trial court by C.C. art. 1934(3).
The judgment is affirmed.
AFFIRMED.